UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERIC LUNSFORD,<br><br>Petitioner,<br><br>v.<br><br>STEVEN JOHNSON, et al.,<br><br>Respondents. | Civil Action No. 18-8039 (SDW)<br><br><br>OPINION |

**WIGENTON**, District Judge:

Presently before the Court is the amended petition for a writ of habeas corpus of Eric Lunsford ("Petitioner") brought pursuant to 28 U.S.C. § 2254 challenging Petitioner's state court convictions (ECF No. 3). Following this Court's Order to Answer, the State filed responses to the petition (ECF Nos. 5-6, 17-19), to which Petitioner has replied (ECF No. 9, 20). Also before the Court Petitioner's motion seeking an evidentiary hearing, the appointment of counsel, and to expand the record. (ECF No. 16). For the following reasons, this Court will deny Petitioner's motion, deny the petition, and deny Petitioner a certificate of appealability.

**I. BACKGROUND**

In its opinion affirming Petitioner's conviction and sentence, the Superior Court of New Jersey – Appellate Division provided the following summary of the factual basis of this matter:

> At the time of this incident, Jeffrey King and Everett Stephenson lived in the second-floor apartment of a three-unit building in Newark. Derrick Keitt lived on the first floor.
>
> On August 16, 2008, at around 6:30 p.m., Keitt heard banging on his door. He looked through the peephole but did not recognize the two men at his door. Keitt ran out the back door and

1

up the stairs to the second-floor apartment where King and Stephenson were.

King retrieved a gun from the back room and all three men went downstairs. At the bottom of the stairs, they noticed the front door had been kicked in. King noticed a man standing on the front porch and pointed his gun at him. When Stephenson and King observed a gun in the man's waistband they retrieved it after a brief struggle. As Stephenson was about to hit the man again, he was shot in the back. A second gunman, later identified as [Petitioner], came through the doorway and told Stephenson and King to let the first gunman go.

[Petitioner] fired three or four times, hitting both Stephenson and King in the back. [Petitioner] and the first gunman then fled. Stephenson realized he could not walk and dragged himself over to where King was lying. The first gunman began walking back toward the porch steps and Stephenson fired his gun at him, causing him to leave.

Before the shooting began, Keitt ran from the house toward the street. While he was running, he heard three or four shots. Once Keitt realized he was not being followed, he looked back and saw [Petitioner] and the first gunman get into a car with a third man and drive away. Keitt ran back to the house where he found Stephenson and King shot, but both were conscious.

King and Stephenson wanted Keitt to remove King's gun from the porch. Keitt mistakenly picked up the gun left by the first gunman and hid it in the backyard of another home. King's gun was left on the porch.

King and Stephenson were taken to the hospital where King died later that night. Stephenson underwent extensive rehabilitation and was unable to walk for several months.

At the police station, Keitt described the shooter and [about six] weeks later identified [Petitioner] from a photo array. At trial, Stephenson was unable to identify [Petitioner] but Keitt again identified him as the shooter. [Petitioner] did not testify.

The jury found [Petitioner] not guilty of the murder of Jeffrey King, but guilty of the lesser-included offense of aggravated manslaughter (count one); not guilty of the attempted murder of Everett Stephenson, but guilty of the lesser-included offense of aggravated assault (count two); guilty of the fourth-degree assault

> with a firearm (count three); guilty of second-degree unlawful possession of a weapon without the required permit to carry same (count four); and guilty of second-degree possession of a weapon with the intent to use it against the person or property of another (count five).
>
> [Petitioner] was sentenced to twenty-five years for aggravated manslaughter, subject to the No Early Release Act (NERA), [N.J. Stat. Ann. §] 2C:43-7.2. On the aggravated assault charge, [Petitioner] received ten years to run consecutively with the sentence on count one. [Petitioner] also received a sentence of eighteen months on count three, to run concurrently with the sentence on counts on and two. He was sentenced to five years on count four, to run concurrently with the sentence for counts one and two, and five years for count five, to run concurrently with counts one, two, and four.

(Document 6 attached to ECF No. 6 at 3-5).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, --- U.S. ---, ---,132 S. Ct. 2148, 2151 (2012). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is firmly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, --- U.S. ---, ---, 125 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B. Analysis**

**1. Petitioner's Ineffective Assistance of Counsel Claims**

In his petition, Petitioner raises several claims which assert that he suffered ineffective assistance of trial. The standard applicable to such claims is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the

4

> 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687*; see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

5

### a. Petitioner's Identification-related Ineffective Assistance Claims

Petitioner first asserts that his trial attorney erred in failing to request a hearing pursuant to *United States v. Wade*, 388 U.S. 218 (1967), so that Petitioner could seek to suppress Keitt's identification of Petitioner several weeks after the shooting in this matter. Petitioner also asserts that he is entitled to habeas relief notwithstanding counsel's failings as the admission of Keitt's identification violated Due Process. In order to show that he was prejudiced by counsel's failure to seek to suppress Keitt's identification via a *Wade* hearing, a petitioner "must show that he would likely have prevailed on [his] suppression motion and that, having prevailed, there is a reasonable likelihood that he would not have been convicted." *Thomas v. Varner*, 428 F.3d 491, 502 (3d Cir. 2005). The Supreme Court set the standard for determining the admissibility of an out of court identification in *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977). In *Manson*, the Court held that an identification procedure violates due process and the resulting identification is therefore inadmissible where the procedure used by the state was "unnecessarily suggestive and . . . create[d] a substantial risk of misidentification." *United States v. Brownlee*, 454 F.3d 131, 137 (3d Cir. 2006); *see also United States v. Anthony*, 458 F. App'x 215, 218 (3d Cir. 2012). Although reliability is "the linchpin in determining the admissibility of identification testimony," *Manson*, 432 U.S. at 114, the question of whether an identification is reliable need only be addressed where the procedures used to procure that identification were themselves suggestive. *Id.* at 107-14; *see also State v. Henderson*, 208 N.J. 208, 218-220 (2011) (Under New Jersey law a *Wade* hearing need only be held where a criminal defendant "can show some evidence of suggestiveness").

In this matter, Petitioner utterly fails to show that the procedures used to obtain Keitt's identification was in any way impermissibly suggestive. As the Appellate Division observed on direct appeal,

> [a]lthough more than a month elapsed between the incident and Keitt's viewing of the photographs [used in his identification of Petitioner], that, in itself, is not sufficient to constitute impermissible suggestiveness or inadmissibility. . . .
>
> The process employed by the Newark Police Department comported with the New Jersey Attorney General's guidelines concerning photo identification procedures. These guidelines contain two important procedural recommendations meant to further diminish any apparent suggestion in the process. The first is to use someone other than an investigator involved in the case to conduct the photo identification process to ensure any possible non-verbal cues are eliminated. Detective Guy Trogani, who was not involved in the investigation, was chosen to show the photo display to Keitt. The second recommended procedure is to show the photographs in sequence, displaying one photo . . . at a time to the witness. Keitt was shown six photographs, one at a time, and asked to sign the one he recognized. After Keitt picked the photo of [Petitioner], he signed the photo. On a separate form, each of the photographs shown to Keitt was attached.

(Document 6 attached to ECF No. 6 at 8-9, internal quotations and citations omitted).

As all of these observations are well supported by the record in this matter, it is clear that Petitioner has failed to present any evidence whatsoever that the procedures used in Keitt's identification of him were in any way suggestive, let alone impermissibly so. Absent any evidence of suggestive procedures, any discrepancies in Keitt's testimony go only to the weight or credibility of Keitt's identification, and do not affect the admissibility of his identification. *Manson*, 432 U.S. at 107-14. Petitioner has thus failed to show that he would have been entitled to a *Wade* hearing had counsel requested one, and his claim that counsel was ineffective in failing to seek either a *Wade* hearing in particular or the suppression of Keitt's identification in general must fail as Petitioner cannot show that he was prejudiced by counsel's decision not to pursue that

7

course. *Thomas*, 428 F.3d at 502. Likewise, because Petitioner cannot show suggestive procedures, he likewise has failed to established that his Due Process rights were in any way violated by the admission of Keitt's identification.[1] *Id.*; *Manson*, 432 U.S. at 107-114; *Henderson*, 208 N.J. at 218-220. Thus, Petitioner's identification related claim fails both as a direct claim for relief and as a basis for an ineffective assistance of counsel claim, and provides no basis for habeas relief.

In his supplemental briefs before this Court (ECF Nos. 10, 16) and in his second PCR petition, Petitioner also argued that his trial counsel was ineffective in failing to challenge the Keitt identification because of a conflict of interest. In essence, Petitioner argues that his trial counsel once represented Lawrence Parks, an individual whom Petitioner was found guilty of killing in a

---

[1] Petitioner also briefly suggests that the trial court's admission of the identification was faulty because the trial court "did not [*sua sponte*] charge the jury . . . that [they] could consider Keitt's stress when he saw the man with the gun" in evaluating his credibility. A jury charge will only warrant habeas relief where "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Duncan v. Morton*, 256 F.3d 189, 203 (3d Cir.), *cert. denied*, 534 U.S. 919 (2001). In this matter, the trial court extensively charged the jury to critically evaluate the credibility of the identifications made in and out of court by considering factors including the observations made, the circumstances under which those observations were made, the ability of the witness to make those observations under the circumstances including the opportunity the witness had to view the perpetrator at the time of the shooting given the surrounding events, as well as the witness's degree of attention to the perpetrator at the time of the shooting. (*See* Document 23 attached to ECF No. 6 at 88-90). It is thus clear, in context, that the trial court gave the jury a charge which addressed the concerns Petitioner now raises, and that the jury instruction therefore did not "so infect" the trial as to deny Petitioner his right to Due Process. *Id.* Thus, to the extent Petitioner intended to raise a claim regarding the instruction, that claim is also without merit.

Petitioner also belatedly attempts in his reply brief to re-raise his *Wade* claim by asserting that appellate counsel was ineffective in raising the claim on the merits on direct appeal rather than as a basis for PCR relief, but has not provided any facts which would show that his claim would have been any more successful as a claim for relief on PCR than on direct appeal. In any event, because Petitioner has failed to show any basis for relief as to his *Wade* claim regardless of whether it was raised on PCR or direct appeal, Petitioner has failed to show he was prejudiced by appellate counsel's decision and his late raised ineffective assistance of appellate counsel claim is therefore without merit.

separate criminal matter, prior to representing Petitioner in the underlying matter in this case, and counsel's failure to challenge Keitt's identification was the result of a conflict of interest between counsel's alleged loyalty to the deceased Parks and his duty to represent Petitioner. Initially, the Court notes that the Appellate Division determined that all of the claims raised in Petitioner's second PCR petition were both untimely and in any event procedurally barred. (*See* Document 7 attached to ECF No. 17 at 11). As such, Petitioner's conflict of interest related claim is procedurally defaulted before this Court, and can therefore not provide Petitioner a basis for relief unless he can show actual innocence, cause and actual prejudice for his procedural faults, or that a failure to review his claim would result in a miscarriage of justice – showings Petitioner has not even attempted to make. *See, e.g., Hubbard v. Pinchak*, 378 F.3d 333, 338 (3d Cir. 2004). Plaintiff's claim is thus procedurally barred in this matter.

Even putting aside the procedural default issue, however, the Appellate Division rejected Plaintiff's bald assertion that counsel's previous representation of Parks in any way affected his representation of Petitioner, finding as follows:

> [Petitioner's] trial counsel, Roberts, did not represent [Petitioner] in the prosecution of Parks' death. By the same token, Parks had nothing to do with the violent home invasion which is at the heart of the current [matter]. Indeed, he was already dead when the complaint on the home invasion was issued. Parks, in other words, was not a victim in the case in which Roberts represented [Petitioner], and Roberts did not represent [Petitioner] in the Parks shooting case. Furthermore, the record does not indicate how and in what matter Roberts had once represented Parks. . .
>
> In these circumstances, we do not believe that [Petitioner] has established that Roberts was foreclosed from representing [Petitioner] due to a concurrent conflict of interest. . . [as] the former representation of Parks was not directly adverse to [Petitioner]'s interests[.]
>
> . . . .

> Furthermore, as the PCR court found, [Petitioner] in the present case has failed to show that there is a significant risk that Robert's representation of [Petitioner] was materially limited by his former representation of Parks . . . . Indeed, [Petitioner] has not explained how Roberts was limited at all, much less materially limited, in zealously representing [Petitioner]'s interests by reason of his prior representation of parks. The two cases are simply unrelated.

(Document 7 attached to ECF No. 17 at 13-17).

Criminal defense counsel will be found to be constitutionally ineffective based on conflicts of interest only where counsel "'actively represented conflicting interests,' and an actual conflict of interest adversely affected the lawyer's performance. *Hess v. Mazurkiewicz*, 135 F.3d 905, 910 (3d Cir. 1998) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)). Where a criminal defendant can show an actual, conflict of interest adversely affected the lawyer's performance, prejudice will be presumed. *Id.* Where the petitioner instead only shows "a potential conflict of interest," he will still be required to prove prejudice. *Id.*

Here, Petitioner has failed to show any actual active conflict of interest. As indicated by the Appellate Division, counsel's representation of Parks – the nature of which is at best vaguely asserted – had clearly ended by the time he represented Petitioner – indeed, Parks was already dead by the time of the representation at issue here. Petitioner has not shown any continuing conflict of interest, nor that any alleged conflict had any effect upon counsel's representation here. Although Petitioner asserts – without support – that counsel's "failure" to challenge Keitt's identification was the result of this alleged conflict, he has drawn no connection between them. Ultimately, because Petitioner has utterly failed to show any active conflict of interest nor actual impact upon his defense, the Appellate Divisions' rejection of his conflict of interest claim is neither contrary to, nor an unreasonable application of, federal law. Thus, even if Petitioner had

10

shown an entitlement to evade his procedural default, this claim would still serve as no basis for habeas relief.

b. **Petitioner's alibi related ineffective assistance claim**

Petitioner next asserts that counsel proved ineffective in failing to discover, investigate, and present an alibi claim. Specifically, Petitioner asserts that he had an alibi for the night of the shooting – that he was with the mother of his child, Jasmine Walker, at the time – and that had counsel asked him about his defense he would have told counsel about this potential alibi. During both his first PCR and in this Court, however, Petitioner has utterly failed to present any certification or signed affidavit setting forth what testimony, if any, Ms. Walker would have provided had she testified at his trial. The state PCR courts rejected this claim in Petitioner's first PCR both because Petitioner failed to allege that he even told counsel about the alleged alibi and because Petitioner failed to provide any information as to what testimony Ms. Walker could have provided which prevented him from being able to show *Strickland* prejudice. (*See* Document 13 attached to ECF No. 6 at 7).

As this Court has explained,

> [i]n *Strickland*, the Supreme Court held that trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." 466 U.S. at 691. "The failure to investigate a critical source of potentially exculpatory evidence may present a case of constitutionally defective representation," and "the failure to conduct any pretrial investigation generally constitutes a clear instance of ineffectiveness." *United States v. Travillion*, 759 F.3d 281, 293 n. 23 (3d Cir. 2014) (internal quotations omitted); *see also United States v Gray*, 878 F.2d 702, 711 (3d Cir. 1989) (noting that a complete absence of investigation usually amounts to ineffective

assistance because a counsel cannot be said to have made an informed, strategic decision not to investigate); *United States v. Baynes*, 622 F.2d 66, 69 (3d Cir. 1980).

Where a Petitioner can show that counsel's failure to investigate amounts to deficient performance, he must still show prejudice. In order to do so,

> a defendant basing an inadequate assistance claim on his or her counsel's failure to investigate must make "a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming admissibility in court, would have produced a different result.

*United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (quoting *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987)); *see also United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011) ("[w]hen a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced"); *United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome" of Petitioner's case); *accord Untied States v. Garvin*, 270 F. App'x 141, 144 (3d Cir. 2008).

*Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016).

Where a petitioner's claim of failure to investigate is based on counsel's failure to investigate or call a certain witness at trial, a showing of prejudice has an additional requirement – the provision of a sworn affidavit or testimony from the witness regarding what testimony would have been provided had the witness been called at trial. *See Judge*, 119 F. Supp. 3d at 285; *see also Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001), *cert. denied*, 534 U.S. 919 (2001). Because a showing of *Strickland* prejudice "may not be based on mere speculation about what . . . witnesses . . . might have said," *Duncan*, 256 F.3d at 201-02 (quoting *Gray*, 878 F.2d at 712), a

petitioner's failure to provide a sworn statement from the alleged witness is fatal to the petitioner's ability to make out a claim of prejudice based on the failure to call that witness. *Judge*, 119 F. Supp. 3d at 285; *Duncan*, 256 F.3d at 202. Here, Petitioner failed to present any sworn affidavit from Ms. Walker regarding her proposed testimony in his first PCR, and the state courts thus rejected his claim on the merits as he had failed to allege he had raised the issue with counsel and had in any event failed to show prejudice by failing to include an affidavit from the proposed witness. That decision was neither contrary to, nor an unreasonable application of federal law, and the PCR courts' rejection of that claim during Petitioner's first PCR petition therefore provides no basis for habeas relief. *Judge*, 119 F. Supp. 3d at 285; *Duncan*, 256 F.3d at 202; *see also Palmer*, 592 F.3d at 395.

Although Petitioner does not appear to have provided any copies of the document to this Court, during his second PCR proceedings he did provide the PCR court with a sworn statement from Ms. Walker regarding her ability to testify in Petitioner's defense at trial, and in his reply brief here he suggests that his failure to provide an affidavit from her to this Court or the first PCR court should therefore be excused. The state court, however, dismissed that claim during the second PCR proceeding as procedurally barred both because that claim had been raised and rejected in Petitioner's first PCR petition and because the facts Petitioner failed to present in his first PCR petition – the certification from Ms. Walker – were known to Petitioner and were readily discoverable during the first PCR process. The state court thus found the claim procedurally barred and time barred in the second PCR petition litigation. (*See* Documents 4 and 7 attached to ECF No. 17). Because this version of Petitioner's claim – including a purported certification from Ms. Walker – was dismissed on procedural grounds by the state court, this Court may not grant relief on this version of the claim absent a showing of some basis for evading the procedural default bar

13

to habeas relief such as actual innocence or cause and actual prejudice. *Hubbard*, 378 F.3d at 338. Petitioner attempts to make no such showing, and as such, this Court is barred from granting any relief on this version of Petitioner's claim. *Id.*

### c. Petitioner's mistrial motion related ineffective assistance claim

In his final ineffective assistance of counsel claim, Petitioner asserts that his counsel proved constitutionally defective in "disparaging" a motion for a mistrial made following a juror being confronted by an individual who made comments about her brother's case and the assistant prosecutor involved in Petitioner's trial while the juror was in the courthouse waiting to resume jury deliberations. According to the juror, while near an elevator in the courthouse, a woman approached her, stated that her brother was "locked up" and made comments about the assistant prosecutor and stated that the public defender was "rude" and that she had to "call and curse him out and . . . call[] his supervisor." (Document 21 attached to ECF No. 6 at 5-6). The woman continued to speak despite the juror attempting to ignore her, but did not mention Petitioner or identify her brother. The trial court thereafter interviewed all of the jurors, all of whom stated they would be willing to proceed impartially notwithstanding this occurrence. (*Id.* At 6-50). Because one juror other than the one who was approached felt that this incident was meant to intimidate the jury, the trial judge excused that juror in response. (*Id.* at 50-55).

Although all parties agreed to the excuse of the juror who believed that the incident was an attempt at jury intimidation, Petitioner's trial counsel went further and made a motion for a mistrial by stating the following:

> I agree with [the State] about that juror. I think he has to go, but I
> have to make a motion for the entire – you know, as repugnant as it
> is for me to do this, I have to make a motion to have a mistrial.

14

> This last juror [who the trial court excused] feels that there was an approach to influence a juror. He says he can be fair and I don't see how that's possible, and just the fact that a juror was approached, even with the Court's charge which we know will be a strong one and the elimination which we have to do with a juror, I think there's a real potential for a taint here.
>
> Obviously, I don't have to say this to anybody, or the importance in this case for everybody concerned and if there's any chance that the jury may be tainted by this, it would have to be dismissed and I would make that motion.

(*Id.* at 51-52). Counsel thereafter argued that "if there's even a slight chance of contamination of a jury" a mistrial should be granted and that the fact that one juror felt that this was an attempt to influence the jury such a chance of contamination existed notwithstanding the other jurors denying having heard this belief from the excused juror. (*Id.* at 55). The judge denied that motion.

Petitioner's entire argument on that issue is that, by referring to making a motion for a mistrial as being "repugnant," his trial attorney disparaged and ultimately weakened a motion that otherwise would have been successful. As the PCR appellate court noted, that argument entirely ignores the context and the thoughtful argument on the issue provided by trial counsel. Trial counsel's statement that making such a motion could be "repugnant" was nothing more than a recognition of the gravity of a motion for a mistrial whose success would likely require the trial court to repeat Petitioner's entire trial, and in context it is clear that counsel did not "disparage" his own motion for a mistrial. Instead, the record makes it clear that counsel pursued that motion and supported it with a cogent and thoughtful argument in support of the granting of a mistrial. Counsel's use of the word "repugnant" had no effect upon the outcome of his motion, and in context in no way disparaged the mistrial motion. Petitioner's contention is thus belied by the record and is utterly without merit. Petitioner has failed to show that the outcome of the motion

15

would have been different absent the use of the word repugnant, and as such his claim must fail. *Strickland*, 466 U.S. at 692-94.  Petitioner is thus not entitled to habeas relief.

**2.  Petitioner's prosecutorial misconduct claim**

In addition to the ineffective assistance claims considered above, Petitioner also argues that he was denied Due Process by alleged prosecutorial misconduct during the questioning of the surviving victim, Everett Stephenson.  The duty of a prosecutor in a criminal proceeding is to see that justice is done rather than to secure convictions, and as such prosecutors must "refrain from [the use of] improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935); *see also United States v. Bailey*, 840 F.3d 99, 124 (3d Cir. 2016). While a prosecutor "may strike hard blows [during his summation], he is not at liberty to strike foul ones." *Berger*, 295 U.S. at 88; *Bailey*, 840 F.3d at 124.  A criminal conviction, however, "is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Harris*, 471 F.3d 507, 512 (3d Cir. 2006) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985).  Prosecutorial misconduct will therefore only warrant habeas relief where it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *see also Copenhefer v. Horn*, 696 F.3d 377, 392 n. 5 (3d Cir. 2012).

In this claim, Petitioner takes issue with the prosecution asking the surviving victim in this matter whether he came to trial voluntarily, a question which resulted in an objection and sidebar during which the State agreed only to ask whether the victim had been subpoenaed rather than any other questions about the voluntary nature of the victim's appearance at Petitioner's trial.  (*See*

16

Document 20 attached to ECF No. 6 at 30-32).  During the sidebar, the State explained that the question was meant to pre-empt any questions from Petitioner about the State having paid to have the victim brought to trial, although the State had not paid him for any testimony.  (*Id.*).  The State denied any intent to suggest that the victim was afraid of Petitioner.  (*Id.*).  Following the sidebar, the prosecutor asked Stephenson whether he was present because he had been subpoenaed, which Stephenson answered affirmatively.  (*Id.* at 32).  The prosecution thereafter did not mention the voluntariness or lack thereof of Stephenson's appearance, but did discuss with him his recovery process.  (*Id.* at 52).  During that testimony, Stephenson stated that he was taken to the hospital in an ambulance following the shooting, spent four days in the hospital, and was then sent to the Kessler Institute for rehabilitation for approximately a month.  (*Id.*).  When Stephenson then testified that he had moved out of state, the prosecution asked him where he went following the Kessler institute but specified that Stephenson didn't "have to be specific as to which state." (*Id.*). Petitioner contends that these few questions, separated by twenty pages of direct examination and which do not mention fear of Petitioner in any way, amount to an improper suggestion by the prosecution that Stephenson was hiding from Petitioner out of fear.

Taken in context, it is clear that these few questions in no way deprived Petitioner of a fair trial.  While the prosecution asked a few questions that concerned Stephenson's having been subpoenaed and the fact that he left the state for further treatment, nothing in the record suggests that these few questions, taken in the context of a lengthy direct examination, in any way suggested that Stephenson, who did not identify Petitioner, was afraid or was otherwise in danger because of his testimony.  Instead, the questions merely addressed why Stephenson appeared – because he was subpoenaed – and provided the jury with the context of the lengthy period of recovery and rehabilitation Stephenson required to recover from his injuries.  It is thus clear that these questions

did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process," *Darden*, 477 U.S. at 181, and that Petitioner has therefore failed to show that these comments amounted to prosecutorial misconduct. Petitioner has thus failed to show that he is entitled to habeas relief and his claim must therefore be denied.

**C.  Petitioner's motions seeking counsel, an expansion of the record, and a hearing**

Following his efforts to exhaust his conflict of interest related claim in his second PCR proceeding, Petitioner filed in this Court a motion (ECF No. 16) seeking the appointment of counsel, to expand the record to include a disciplinary opinion against his trial counsel completely unrelated to the alleged conflict of interest in this matter, and for an evidentiary hearing to flesh out his conflict claim. Because all of Petitioner's claims are either clearly procedurally barred, without merit, or both, for the reasons expressed above, Petitioner has failed to show that he is entitled to an evidentiary hearing in this matter and his requests for a hearing or the appointment of counsel are therefore denied. *Palmer*, 592 F.3d at 395. Petitioner's request to expand the record is likewise denied as the document he wishes the court to consider – a New Jersey disciplinary opinion regarding his trial counsel unrelated to the alleged conflict of interest in this matter – is irrelevant to the claims presented and would have no effect upon the outcome of those claims were this Court to consider it. Petitioner's motion (ECF No. 16) is therefore denied.

**III.  CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this

standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because Petitioner's habeas claims are all without merit, procedurally barred, or both for the reasons set forth above, he has failed to make a substantial showing of a denial of a constitutional right, and his petition is not adequate to receive encouragement to proceed further. This Court therefore denies Petitioner a certificate of appealability.

### IV. CONCLUSION

For the reasons stated above, Petitioner's amended petition for a writ of habeas corpus (ECF No. 3) is DENIED, Petitioner is DENIED a certificate of appealability, and Petitioner's motion seeking the appointment of counsel, to expand the record, and an evidentiary hearing (ECF No. 16) is DENIED. An appropriate order follows.

Dated: March 30, 2021　　　　　　　　　　　　　*s/Susan D. Wigenton*
　　　　　　　　　　　　　　　　　　　　　　　Hon. Susan D. Wigenton,
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge